UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARPON BAY PARTNERS LLC,<br><br>              Plaintiff,<br>   v.<br><br>VISIUM TECHNOLOGIES, INC. f/k/a NUTSTATE ENERGY HOLDINGS, INC., MARK B. LUCKY, THOMAS M. GRBELJA, PAUL A. FAVATA, AND HENRY J. HOLCOMBE,<br><br>              Defendants. | Case No. 3:18-cv-02003-CSH<br><br>**October 13, 2021** |

## ORDER RE: SUBJECT MATTER JURISDICTION

### I. BACKGROUND

Plaintiff Tarpon Bay Partners, LLC ("Tarpon") brings this action against Visium Technologies, Inc. f/k/a NuState Energy Holdings ("Visium"), Mark B. Lucky ("Lucky"), Thomas M. Grbelja ("Grbelja"), Paul A. Favata ("Favata"), and Henry J. Holcombe ("Holcombe"). Underpinning the dispute is a written term sheet (the "Liabilities Purchase Term Sheet"), pursuant to which Tarpon claims ASC Recap LLC ("ASC") agreed to purchase debts from Visium's creditors and obtain court approval for ASC to receive Visium's common stock ("Common Stock") in exchange for retiring the creditors' debts. *See* Doc. 1-4, ¶ 10. Tarpon claims that, under the Liabilities Purchase Term Sheet, ASC was entitled to two forms of compensation: (1) a signing fee in the amount of $25,000 (the "Signing Fee") and (2) a success fee (the "Success Fee") whereby ASC would earn a non-refundable commitment fee equal to the greater of (a) five percent of the aggregate amount of liabilities purchased by ASC from Visium's creditors and retired pursuant to the terms of the Liabilities Purchase Term Sheet or (b) $125,000.00, upon court approval of the

1

transaction's fairness. *Id.* ¶¶ 13-15. Tarpon states that the Signing Fee and the Success Fee could be paid in the form of a convertible promissory note and could be converted into Common Stock. *Id.* ¶ 16.

According to Tarpon, ASC earned the Signing Fee when Visium executed the Liabilities Purchase Term Sheet. *Id.* ¶ 17. Visium entered into a convertible promissory note (the "Signing Fee Note") as maker, with ASC as holder, in the principal amount of $25,000.00. *Id.* ¶ 18. Under the terms of the Signing Fee Note, ASC was granted the right to convert all or a portion of all amounts due under the Signing Fee Note into Common Stock. *Id.* ¶ 19. ASC transferred and assigned all its rights and interests in and under the Signing Fee Note to Tarpon. *Id.* ¶ 21. Similarly, Tarpon claims that ASC earned a Success Fee when it began remitting funds to Visium's creditors to retire debt. *Id.* ¶ 22. Visium entered into a convertible promissory note (the "Success Fee Note") as maker, with ASC as holder, in the principal amount of $125,000.00. *Id.* ¶ 23. Under the terms of the Success Fee Note, ASC was granted the right to convert all or a portion of all amounts due under the Success Fee Note into Common Stock. *Id.* ¶ 24. ASC transferred and assigned all its rights and interests in and under the Signing Fee Note to Tarpon. *Id.* ¶ 26.

Tarpon alleges that Visium complied with its first written notice of conversion under the Signing Fee Note, issued on or about June 15, 2016, whereby Tarpon converted principal in the amount of $2,035.00 into 508,750 shares of Common Stock (the "First Conversion Shares"). *Id.* ¶¶ 27-29. However, Tarpon claims that Visium failed to comply with its second notice of conversion under the Signing Fee Note, issued on or about May 4, 2018, whereby Tarpon converted principal in the amount of $4,045.00 into 147,091 shares of Common Stock (the "Second Conversion Shares"). *Id.* ¶¶ 30-32. Tarpon also states that Visium failed to comply with its third notice of conversion, issued on or about June 21, 2018, whereby Tarpon converted "the

entire remaining amount" due under the Signing Fee Note, $21,500.00, into 283,026 shares of Common Stock (the "Third Conversion Shares"). *Id.* ¶¶ 33-35. Finally, Tarpon alleges that Visium failed to comply with Tarpon's notice of conversion under the Success Fee Note, issued on or about July 2, 2018, whereby Tarpon converted the sum of $75,895.00 into 1,124,370 shares of Common Stock (the "Success Fee Conversion Shares"). *Id.* ¶¶ 36-38. The Court refers collectively to the Second Conversion Shares, the Third Conversion Shares, and the Success Fee Conversion Shares as the "Conversion Shares."

Tarpon further claims that (1) Lucky is a director of Visium, an officer of Visium, and the owner of 10% or more of Visium's common stock, (2) Grbelja is a director of Visium and the owner of 10% or more of Visium's common stock, (3) Favata is a director of Visium and the owner of 10% or more of Visium's common stock, and (4) Holcombe has been the Chief Executive Officer of Visium since about August 20, 2018. *Id.* ¶¶ 39-43. Tarpon alleges that Lucky, Grbelja, and Favata "have caused Visium to issue a total of 4,398,336 shares of [Visium] common stock to themselves during the period beginning May 3, 2018 and ending August 31, 2018." *Id.* ¶ 45. Moreover, "since becoming the Chief Executive Officer of Visium on or about August 20, 2018 . . . Holcombe has received 763,889 shares of Visium Common Stock, which he currently holds." *Id.* ¶ 46.

A. **Procedural History**

On July 20, 2018, Tarpon filed an action against Visium in the Connecticut Superior Court, Judicial District of Danbury (the "State Court Action") requesting (1) a judgment compelling specific performance by Visium, (2) a constructive trust over the Conversion Shares, (3) damages due to Visium's alleged breach of contract, and (4) damages due to Visium's alleged breach of implied covenant of good faith and fair dealing. *See* Doc. 1-1, ¶¶ 33-54. On October 16, 2018,

3

Tarpon filed a motion in the State Court Action to include Lucky, Grbelja, Favata, and Holcombe (the "Individual Defendants") as additional defendants. *See* Doc. 1-2. The Superior Court granted Tarpon's motion on October 30, 2018, *see* Doc. 1-3, and Tarpon filed an Amended Complaint on November 7, 2018, *see* Doc. 1-4. The Amended Complaint alleged an additional count of tortious interference with contract against each of the Individual Defendants. *See* Doc. 1-4, ¶¶ 69-104. Tarpon served the Amended Complaint on the Individual Defendants on or about November 8, 2018. Doc. 1, ¶ 4. The Individual Defendants represent that, "[t]o the best of their recollection" they "received copies of the Amended Summons and Complaint on or about November 13, 2018." *Id.*

On December 7, 2018, the Individual Defendants removed the action to this Court based on diversity subject matter jurisdiction. "Specifically," claim the Individual Defendants, "this Court has jurisdiction because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs." *Id.* at 1. Defendant Visium joined and consented to the Individual Defendants' request for removal. *Id.*

On February 8, 2019, Defendant Visium and the Individual Defendants (collectively, "Defendants") filed their Answer to Tarpon's Amended Complaint. Subsequently, on March 1, 2019, Defendants amended their Answer to include a Counterclaim against Plaintiff Tarpon and its alleged "co-conspirators," ASC, Stephen M. Hicks ("Hicks"), and Southridge Advisors II, LLC ("Southridge"). Doc. 9 at 13. The Court collectively refers to ASC, Hicks, and Southridge as the "Additional Counterclaim Defendants" and collectively refers to these Parties plus Tarpon as the "Counterclaim Defendants." According to the Counterclaim, "[d]uring all relevant times, the Counterclaim Defendants engaged in a scheme to fraudulently obtain shares in Visium through material misrepresentations, acts and omissions, and, after obtaining such shares, systematically

4

destroying the value of Visium's stock." *Id.* ¶ 11. The Counterclaim requests declaratory relief and alleges breach of implied contract, breach of fiduciary duty, usury, fraudulent inducement, violation of Section 10(b) of the Securities and Exchange Act of 1934, mistake, aiding and abetting, civil conspiracy, and violation of the Connecticut Unfair Trade Practices Act.

On March 1, 2019, Defendants/Counterclaim Plaintiffs also filed a Motion for Joinder of the Additional Counterclaim Defendants ("Motion for Joinder"), which the Court granted pursuant to Federal Rule of Civil Procedure 20(a)(2). *See* Dkt. 12. Plaintiff/Counterclaim Defendant Tarpon, Counterclaim Defendant Hicks, and Counterclaim Defendant Southridge answered the Defendants' Counterclaim on March 15, 2019. Counterclaim Defendant ASC separately answered the Counterclaim on April 12, 2019.

Currently pending before the Court is a Motion for Status Conference and Settlement Conference filed by Plaintiff Tarpon and the Additional Counterclaim Defendants. *See* Doc. 23. These Parties request that the Court schedule a status conference to discuss a revised schedule in the case. *Id.* at 1. Moreover, in line with the request for an early settlement conference in the applicable Rule 26(f) report, these Parties request a settlement conference before a Magistrate Judge before they "undertake significant discovery or motion practice." *Id.* Defendants' counsel "consents to the requested status conference and settlement conference." *Id.* at 2.

The Court has a *sua sponte* obligation to determine whether subject matter jurisdiction exists in this matter. Here, as set forth in greater detail below, the citizenship of each Party has been insufficiently alleged for the purposes of diversity subject matter jurisdiction.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Pursuant to Article III of the Constitution, a federal court has limited jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-80 (1803)). In general, it may only exercise subject matter jurisdiction if either: (1) the plaintiff sets forth a colorable claim arising under the Constitution or federal statute, creating federal question jurisdiction, 28 U.S.C. § 1331; or (2) there is complete diversity of citizenship between plaintiff and all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1).

"It is incumbent on a federal court to determine with certainty whether it has subject matter jurisdiction over a case pending before it." *Lannunziata v. Am. Stock Transfer & Tr. Co., LLC*, No. 3:20-CV-1865 (CSH), 2021 WL 268856, at *2 (D. Conn. Jan. 27, 2021). If necessary, the court must consider its subject matter jurisdiction *sua sponte* – "on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Courts thus "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* at 514; *see also, e.g.*, *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."); *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991) ("Although we would not normally consider an issue not raised below, the lack of subject matter jurisdiction may be raised at any time, by the parties, or by the court *sua sponte*.").

Unlike personal jurisdiction, "[s]ubject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514 (citation omitted); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) ("A case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)); *Thompson v. United States,* 795 F. App'x 15, 17 (2d Cir. 2019) ("Dismissal of a complaint for lack of subject matter jurisdiction is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" (quoting *Makarova,* 201 F.3d at 113))*, cert. denied,* 140 S. Ct. 2675, 206 L. Ed. 2d 826 (2020); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed."); *Manway Const. Co. v. Hous. Auth. of City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory.") (citations omitted).

In the case at bar, Plaintiff Tarpon has not included federal law claims in its Complaint and/or Amended Complaint. Therefore, there is no arguable basis upon which the Court may assert "federal question" subject matter jurisdiction over the *main* action (as opposed to the Counterclaim) pursuant to 28 U.S.C. § 1331.[1] As discussed above, the Individual Defendants

---

[1] 28 U.S.C. § 1331, captioned "Federal question," provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

7

allege that the alternative jurisdictional basis of "diversity of citizenship" exists under 28 U.S.C. § 1332(a). That statute provides, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
> (1) citizens of different States . . . .

28 U.S.C. § 1332(a)(1).

For diversity of citizenship to exist in this action, the citizenship of all Plaintiffs must be diverse from that of all Defendants. *See, e.g.*, *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)). In addition, there must be a minimum amount in controversy exceeding "$75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a).[2]

"[D]iversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002); *see also Wolde–Meskel v. Vocational Instruction*

---

[2] The element of jurisdictional amount is presumed satisfied. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (affirming district court's conclusion that plaintiff could theoretically recover more than $75,000 in punitive damages, therefore meeting the statutory standard for amount in controversy); *Gross v. Kohl's Dep't Stores, Inc.*, No. 3:14-CV-298 CSH, 2014 WL 1831027, at *1 n. 1 (D. Conn. May 8, 2014). Plaintiff Tarpon, for example, alleges in the Third Count of its Amended Complaint that, due to Visium's alleged breach of contract, it "has suffered damages . . . not less than $1,675,151.91 exclusive of late fees as provided for under the parties' agreements, interest and cost of this action." Doc. 1-4, ¶ 61. Tarpon also claims that it suffered damages in this amount in its Fifth, Sixth, Seventh, and Eighth Counts of tortious interference with contract against each of the Individual Defendants. *Id.* ¶¶ 77, 86, 95, 104. Moreover, Plaintiff states that "[t]he amount, legal interest, or property in demand [in this action] is more than fifteen thousand dollars, exclusive of interest and costs." Doc. 1-1 at 15. Accordingly, the Court cannot conclude to a legal certainty that the amount in controversy is less than the $75,000 required for federal diversity action.

*Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir.1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed – the 'time-of-filing' rule."). "For removal purposes, diversity must exist both at the time that the action was commenced in state court and at the time of removal." *Buturla v. AWTY Prods., LLC*, No. 3:12-CV-1758 CSH, 2012 WL 6649590, at *2 (D. Conn. Dec. 20, 2012) (citing *Kellam v. Keith*, 114 U.S. 586, 568-70 (1892)); *see also Royal Ins. Co. v. Jones*, 76 F. Supp. 2d 202, 204 (D. Conn. 1999) ("Diversity jurisdiction must exist both at the time the complaint was filed in state court and at the time of removal.").

### B. Diversity of Citizenship

#### 1. *Citizenship of Plaintiff/Counterclaim Defendant Tarpon*

The citizenship of Plaintiff/Counterclaim Defendant Tarpon Bay Partners, LLC is insufficiently pled for two reasons. First, the Amended Complaint characterizes Tarpon as a corporation with a principal place of business in Florida, but the Notice of Removal claims Tarpon is a limited liability company and a citizen of Connecticut. Second, if Tarpon is a limited liability company, as its name suggests, then its citizenship has not been adequately pled because it has not been established that its alleged single member is domiciled in Connecticut.

According to its Amended Complaint, "Plaintiff is a Florida *corporation* with a principal place of business located in Ridgefield, Connecticut." Doc. 1-4, ¶ 1 (emphasis added). By contrast, the Notice of Removal filed by the Individual Defendants alleges that "Plaintiff is a *limited liability company* organized under the laws of the State of Florida, with a principal place of business in Naples, Florida." Doc. 1, ¶ 9 (emphasis added). The Notice of Removal further states that "[o]n information and belief, Tarpon Bay, LLC is a single member limited liability company, and according to public filings, that single member, [Hicks], resides in Ridgefield,

9

Connecticut." *Id.* Accordingly, "[i]t follows that Hicks is domiciled in Connecticut, and, as a result, Plaintiff's domicile is Connecticut." *Id.*

If Tarpon is a corporation, it "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). To determine the citizenship of a corporation, the Court must be informed of *all* of the states in which it is incorporated and its *principal place of business*. Therefore, if Tarpon is incorporated in Florida, this would destroy complete diversity assuming Defendant Visium is a Florida corporation. Doc. 1, ¶ 10 ("Visium is incorporated in the State of Florida, with its principal place of business in Florida."). *But see* Section II.B.2 *infra*.

On the other hand, if Tarpon is a limited liability company, as the "LLC" in its name suggests, it "takes the citizenship of *each of its members*." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 49 (2d Cir. 2012) (emphasis added) (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000)); *see also Wise v. Wachovia Secs, LLC*, 450 F.3d 265, 267 (7th Cir. 2006) (finding that "[t]he citizenship for diversity purposes of a limited liability company . . . is the citizenship of *each of its members*") (emphasis added). Put simply, the "citizenship of a limited liability company is not the state in which it is organized or has its principal place of business, but rather, each of the states in which it has members." *Lewis v. Allied Bronze LLC*, No. 07 Civ. 1621 (BMC), 2007 WL 1299251, at *1-2 (E.D.N.Y. May 2, 2007) (dismissing removed action for lack of diversity jurisdiction).

Here, the Individual Defendants have not shown that Hicks, allegedly Tarpon's single member, is a citizen of Connecticut. The Individual Defendants allege merely that Hicks *resides* in Connecticut and infer that he must also be domiciled there. Then, based on this inference, they argue that Plaintiff, too, must be domiciled in Connecticut. However, although an

10

individual's citizenship for diversity purposes is determined by his or her domicile, residence is not sufficient to prove domicile. *See Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-03 (2d Cir. 1997) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)). "[I]t has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens." *John Birch Soc. v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir.1967). By contrast, "the domicile of an individual is his true, fixed and permanent home and place of habitation"—*i.e*, "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).

In sum, therefore, based on the Amended Complaint and the Notice of Removal, it is unclear whether Tarpon is a corporation or a limited liability company. If it is a limited liability company, alleging the *residence* of its alleged single member, Hicks, is not sufficient to establish its citizenship on the date of removal, December 7, 2018, and the date the action commenced. For Plaintiff Tarpon, the Court determines that the action commenced on the day that Tarpon filed its initial Complaint in the State Court Action: July 20, 2018.

### 2. *Citizenship of Defendant Visium*

The citizenship of Defendant Visium is insufficiently pled because the states in which it is incorporated and has its principal place of business are unclear based on the Parties' filings. The initial Complaint filed in the Superior Court claims that "[u]pon information and belief, [Visium] was originally incorporated in 1987 under the laws of the State of Nevada and was known by different names at different times including, during the period beginning in about December 2007 and ending in about February 2018, the name 'NuState Energy Holdings, Inc.'" Doc. 1-1, ¶ 1. By contrast, the Amended Complaint states that "Defendant Visium is a Florida corporation." Doc.

11

1-4, ¶ 2. Like the Amended Complaint, the Notice of Removal states that "Visium is incorporated in the State of Florida, with its principal place of business in Florida." Doc. 1, ¶ 10. However, the Counterclaim alleges that "Visium is a Florida corporation with its principal place of business and corporate office located in Fairfax, Virginia." Doc. 9, ¶ 3.

To determine Visium's citizenship, the Court must be accurately informed of *all* of the states in which it is incorporated and its principal place of business on the date of removal, December 7, 2018, and the date on which the action commenced. For Defendant Visium, the Court determines that the action commenced on the day that Tarpon filed its initial Complaint against Visium in the Superior Court: July 20, 2018.

### 3. *Citizenship of the Individual Defendants*

The citizenship of the Individual Defendants is insufficiently pled for two reasons. First, allegations in the Amended Complaint and the Notice of Removal regarding the Individual Defendants' states of residence contradict other filed documents. Second, even despite these contradictions, allegations of residency are insufficient to establish citizenship.

First, the Amended Complaint alleges that Lucky resides in Virginia, Grbelja resides in Florida, Favata resides in Florida, and Holcombe resides in Virginia. Doc. 1-4, ¶¶ 3-6. Similarly, in their Notice of Removal, the Individual Defendants allege that they "reside in Florida, Virginia and New Jersey." Doc. 1, ¶ 10. Therefore, since the Individual Defendants claim in their Notice of Removal that Plaintiff Tarpon is a citizen of Connecticut, they conclude that complete diversity exists. *Id.*

However, these assertions regarding the residences of the Individual Defendants contradict both (a) the Amended Summons included with the Amended Complaint ("Amended Summons")

and (b) Defendants' Statement Pursuant to the Standing Order in Removed Cases ("Removal Statement"). According to the Amended Summons, Defendants Lucky and Holcombe have addresses in Virginia, Defendant Grbelja has an address in *New Jersey*, and Defendant Favata has an address in Florida. Doc. 1-4 at 2. Defendants' Removal Statement alleges that Grbelja is a citizen of New Jersey. It also does not allege that Defendant Favata or any Individual Defendant is a citizen of Florida. In sum, it notes that "Lucky is a citizen of the State of Virginia, Grbelja is a citizen of the State of New Jersey, Favata is a citizen of the State of *Virginia*, [and] Holcombe is a citizen of the State of Virginia . . . ." Doc. 7, ¶ 2 (emphasis added). Based on these contradicting claims, at least the residences of Defendants Grbelja and Favata are unclear.

Second, even if uncertainty about the residences of the Individual Defendants is set aside, this does not dispose of the issue. As discussed above, it is "well-established that allegations of residency alone cannot establish citizenship." *Canedy*, 126 F.3d at 102-03. This is because an individual's citizenship for diversity purposes is determined by his or her *domicile*, as opposed to *residence*. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Because the Individual Defendants have simply alleged their *residences*, they have not pled sufficient facts to prove *citizenship* on the date of removal, December 7, 2018, and the date the action commenced. For the Individual Defendants, the Court determines that the action commenced on the day that Tarpon filed its Amended Complaint against them in the Superior Court: November 7, 2018.

### 4. *Citizenship of Additional Counterclaim Defendants Southridge, ASC, and Hicks*

The citizenship of the Additional Counterclaim Defendants is also insufficiently pled. Defendants/Counterclaim Plaintiffs allege that "[Southridge] is a Connecticut domestic limited liability company," which is "controlled and managed by Hicks." Doc. 9 at 14, ¶ 8. "Upon information and belief, Southridge is a related entity or affiliate of [Tarpon]." *Id.* Similarly, ASC

13

"is a Connecticut limited liability company," which is "controlled and managed by Hicks." *Id.* at ¶ 9. "Upon information and belief, ASC is a related entity, affiliate or predecessor of Tarpon and Southridge." *Id.* Finally:

> Hicks is the alter ego and/or beneficial owner, and/or owner of ASC, Southridge and Tarpon. Hicks is also the alter ego and/or beneficial owner of other entities related to Southridge and Tarpon including Southridge Asset Management, LLC, a registered investment adviser; Southridge Advisors LLC; Southridge LLC; and Southridge Capital Management LLC. Each of the entities operate out of 90 Grove Street, 2nd Floor, Ridgefield, Connecticut—property which is owned by another Hicks entity. Each of the entities operate identical businesses, and, upon information and belief, Hicks uses the various entities interchangeably. Tarpon, ASC and Southridge utilize the same staff and resources to operate the businesses. There is a unity of interest between the entities.

*Id.* at 10.[3]

---

[3] The Memorandum in Support of Defendants/Counterclaim Plaintiffs' Motion for Joinder similarly alleges:

> Tarpon, as well as ASC and Southridge, are controlled and managed by Hicks. Each of the entities are Connecticut limited liability companies that operate out of 90 Grove Street, Ridgefield, Connecticut—property which is owned by another Hicks entity. Each of the entities operate identical businesses, and, upon information and belief, Hicks uses the various entities interchangeably. Tarpon, ASC and Southridge utilize the same staff and resources to operate the businesses such that there is a unity of interest.
>
> In fact, Hicks is the alter ego and/or beneficial owner, and/or owner of ASC, Southridge and Tarpon. Hicks is also the beneficial owner and/or alter ego of other entities related to Southridge and Tarpon including Southridge Asset Management, LLC, a registered investment adviser whose principal place of business is 90 Grove Street, 2nd Floor, Ridgefield, Connecticut; Southridge Advisors LLC; Southridge LLC; and Southridge Capital Management LLC.

Doc. 10-1 at 2-3.

First, as discussed above, alleging Hicks' residence is insufficient to establish his citizenship for diversity purposes as a Counterclaim Defendant. Instead, the Court must be informed of Hicks' domicile. Second, regarding ASC and Southridge, which Defendants/Counterclaim Plaintiffs claim are Connecticut limited liability companies, alleging that Hicks is the owner, controller, or manager of these companies is not sufficient. *Id.* Instead, as discussed above, the Court must be informed of the identities and state(s) of citizenship of each member as of the date the action commenced. For the Additional Counterclaim Defendants, the Court determines that the action commenced on the day that Defendants/Counterclaim Plaintiffs filed their Counterclaim: March 1, 2019.

### III.   CONCLUSION

"Diversity jurisdiction requires that all of the adverse parties in a suit be completely diverse with regard to citizenship." *Handelsman*, 213 F.3d at 51 (citation, internal quotation marks, and ellipsis omitted). Moreover, in general, "the party asserting jurisdiction bears the burden of proving that the case is properly in federal court." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). However, to determine whether it has subject matter jurisdiction – exercising expediency while ensuring that each Party may present accurate, relevant facts regarding its citizenship – the Court hereby ORDERS each of the parties to establish, by affidavit, citizenship for diversity purposes as follows.

1. Plaintiff Tarpon Bay Partners, LLC must declare whether it is a limited liability company or a corporation. If it is a limited liability company, it must submit an affidavit explicitly setting forth the identities and state(s) of citizenship of each of its members as of December 7, 2018 and July 20, 2018. If said members are individuals,

   Tarpon must provide their states of domicile. If any members are corporations, Tarpon must indicate all states of incorporation and the principal place of business for each corporation pursuant to 28 U.S.C. § 1332(c)(1). Furthermore, if any member of Tarpon is itself a limited liability company, Tarpon shall establish the citizenship of each member of that limited liability company as well. Alternatively, if Tarpon is a corporation, it must provide all states of its incorporation and the address of its principal place of business as of December 7, 2018 and July 20, 2018. 28 U.S.C. § 1332(c)(1).

2. Defendant Visium must provide all states of its incorporation and the address of its principal place of business as of December 7, 2018 and July 20, 2018. 28 U.S.C. § 1332(c)(1).

3. The Individual Defendants, Lucky, Grbelja, Favata, and Holcombe, must each submit affidavits indicating their states of citizenship as of December 7, 2018 and November 7, 2018. Specifically, these affidavits must declare (1) the state(s) in which they were *domiciled* and principally established or their "true fixed home[s]" and (2) the names, if any, of other states in which they had residences. If there are additional states where an Individual Defendant maintained a residence, his affidavit must further provide: (a) the location of all such residences kept and (b) the approximate length of time spent at each residence.

4. Counterclaim Defendant Hicks must submit an affidavit indicating his state of citizenship as of March 1, 2019. Specifically, this affidavit must declare (1) the state(s) in which he was *domiciled* and principally established or his "true fixed home" and (2) the names, if any, of other states in which they had residences. If there are additional states in which a residence was maintained, the affidavits must further provide: (a) the

location of all such residences kept and (b) the approximate length of time spent at each residence.

5. Counterclaim Defendants ASC and Southridge, which the Counterclaim alleges are limited liability companies, each must submit an affidavit explicitly setting forth the identities and state(s) of citizenship of each of its members as of March 1, 2019. If any members of ASC and/or Southridge are individuals, the relevant affidavit must provide the individuals' states of domicile. If any members are corporations, they must indicate all states of incorporation and the principal place of business for each corporation pursuant to 28 U.S.C. § 1332(c)(1). Furthermore, if any member of ASC and/or Southridge is itself a limited liability company, the relevant affidavit shall establish the citizenship of each member of that limited liability company as well.

All affidavits must be submitted by **November 15, 2021**, and all case deadlines are STAYED pending the Court's review of the Parties' affidavits. If, based on these affidavits, the Court determines that it possesses subject matter jurisdiction, the action may proceed. Otherwise, in the absence of such jurisdiction, the Court will dismiss the action without prejudice. Moreover, the pending Motion for Status Conference and Settlement Conference is DENIED AS MOOT without prejudice pending the Court's review of the Parties' affidavits. If the Court determines that it has subject matter jurisdiction, the Parties may refile a motion for status conference and/or settlement conference.

It is SO ORDERED.

Dated:  New Haven, Connecticut
        October 13, 2021

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge